**James O. GRAY, Petitioner,**

v.

**C. L. BENSON, Warden, Respondent.**

**Civ. A. No. 77–3041.**

United States District Court,
D. Kansas.

Oct. 31, 1978.

Howard L. Eisberg, Kansas City, Mo., for petitioner.

James P. Buchele, U. S. Atty., Roger M. Theis, Asst. U. S. Atty., Topeka, Kan., for respondent.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

Petitioner, an inmate at the United States Penitentiary, Leavenworth, Kansas, filed this action pursuant to 28 U.S.C. § 2255 asserting that the federal indictment, which resulted in his current sentence, should have been dismissed under Article IV(e) of the Interstate Agreement on Detainers, 18 U.S.C. Appendix (1978 Supp.) [hereinafter referred to as the IAD].

The facts are fully set out in a prior Memorandum and Order of this court, *Gray v. Benson*, 443 F.Supp. 1284 (D.Kan.1978). Therefore, only the most significant factual findings are summarized here:

1. On March 19, 1976, the Government lodged a detainer against Gray while he was a Missouri prisoner in the state penitentiary.

2. Thereafter, Gray was removed from state custody pursuant to a federal writ of habeas corpus *ad prosequendum,* and appeared before this court for a Rule 5 hearing and arraignment on the federal charges.

3. On June 14, 1976, he was "returned to the original place of imprisonment" without being tried.

4. On August 12, 1976, petitioner was again brought before this court by writ of habeas corpus *ad prosequendum* where he entered a plea of guilty and was sentenced to the six-year term he is now serving.

In *Gray v. Benson, supra,* we held that the actions of the federal government in this case, specifically the lodging of a detainer followed by a request for temporary custody in the form of a writ of habeas corpus *ad prosequendum,* were sufficient to place in motion the operation of the Detainers Agreement. The necessary consequence of this holding was that the transfers between the Missouri prison and the District of Kansas were subject to the provisions of Article IV(e) of the Agreement. That section reads:

"(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . ., such indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

We further found in our prior order that the facts of this case "unmistakably evidence a violation of Article IV(e) . . . ."

One issue remains in this case. It is the government's contention that even if the court determines that Article IV(e) is applicable and has been violated, petitioner Gray waived any rights he may have had thereunder by failing to raise this claim prior to entering a plea of guilty. The court, finding this to be a difficult question and one of first impression in our circuit, requested that additional briefs be submitted by both parties. The private attorney representing petitioner, and the Assistant United States Attorney have diligently complied with that request. Having thoroughly considered the arguments and authorities presented by both sides, as well as other relevant judicial decisions rendered subsequent to our previous order, the court is prepared to rule on this final issue.

■ At the outset, it is noted that the question whether a right or privilege has been waived or forfeited is one of law and does not require an evidentiary hearing. *See United States v. Covington,* 395 U.S. 57,

1212

60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969); *United States v. Nolan,* 571 F.2d 528, 533 (10th Cir. 1978).

■■■■ A prefatory discussion of jurisdiction is necessary to respond to the government's contention that this court may not consider a petition for post-conviction relief which asserts a violation of the Interstate Agreement on Detainers. A federal court may entertain a prisoner's application for relief under 28 U.S.C. § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . ." We have jurisdiction to entertain this application for the reason that petitioner is claiming his sentence was imposed in violation of federal law, specifically, the IAD. We are also inclined to exercise jurisdiction over this particular application for the additional reason that upon the filing of this action the fundamental or nonfundamental character of the federal right at issue had not been adequately determined.

The government properly cites *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), and *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1973), for the proposition that a claim may be raised by way of a § 2255 motion only if it is either constitutional or involves a fundamental defect. However, the Supreme Court expressly limited its holding in *Hill* by explaining that it was there concerned with the bare allegation that Rule 32(a) of the Federal Rules of Criminal Procedure was not complied with. The court pointed out that it did not decide the issue of whether a violation of the same rule might warrant federal habeas corpus review if aggravating circumstances, such as prejudice, were alleged as well. In the instant case this court was faced with the complicating circumstances that the claim was based upon a novel construction of a relatively new federal statute by another district court, and included allegations of prejudice and inadequacy of defense counsel. Thus, we took jurisdiction to determine if petitioner was entitled to relief under § 2255 on this unique claim.

It is not intended that our entertaining this particular application, in the wake of the stir caused by the initial decision in *United States v. Mauro,* 414 F.Supp. 358 (E.D.N.Y.1976), be interpreted as wholly discordant with recent cases which hold that a violation of the IAD may not be raised in a collateral proceeding. *Edwards v. United States,* 564 F.2d 652 (2nd Cir. 1977); *see also United States v. Palmer,* 574 F.2d 164 (3 Cir. 1978). In fact, the conclusion we reach in this matter is based upon reasoning consistent with that found in those decisions.

■■■■ Having decided that jurisdiction should be exercised in the instant case, we proceed to determine the remaining substantive issue of whether a criminal defendant, after entering a voluntary guilty plea, is entitled to a dismissal of the indictment because of the government's violation of Article IV(e) of the IAD. We hold that this right under the Act does not survive a defendant's voluntary plea of guilty. *Bambulas v. United States,* No. 76–87–C3 (D.Kan., September 7, 1977), *aff'd* 571 F.2d 525 (10th Cir. 1978); *United States v. Draper,* No. 78–3040 (D.Kan., September 26, 1978).

In reaching this conclusion we initially had to ascertain the nature of the right protected by Article IV(e). The right this section is intended to secure is that of a prisoner to rehabilitation free of the interruptions occasioned by repeated transfers. *United States v. Ford,* 550 F.2d 732, 742 (2nd Cir. 1977), *aff'd United States v. Mauro,* —— U.S. ——, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

In our prior order we held that the right to uninterrupted rehabilitation is waivable. It is a right that chiefly inures to the benefit of the prisoner and therefore may be waived by his actions. *United States v. Ford,* 550 F.2d at 742. To hold otherwise would foreclose any prisoner's request for pre-trial return to the sending jurisdiction for a parole hearing or other legitimate purpose since it would result in automatic dismissal of the indictment. Moreover, a contrary holding would be anomalous in

light of the waivability of such fundamental, constitutional rights as the right to counsel or to a jury trial. *United States v. Palmer, supra.* Thus, we remain convinced, despite petitioner's vigorous statutory construction argument, that the right to unimpeded rehabilitation under the IAD is waivable.

There are basically two separate methods by which criminal defendants may yield or lose fundamental rights. One method is that of "waiver" which means that the accused has engaged in conduct which may be characterized as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). A separate concept is that of "procedural default" which involves the manner in which an accused may forfeit rights by not asserting them prior to or during trial.

The right of a prisoner to uninterrupted rehabilitation is purely statutory and certainly does not embody a fundamental constitutional right of the sort which can be waived only under the strict standard of *Johnson v. Zerbst, supra.*[1] *Strawderman v. United States,* 436 F.Supp. 503 (E.D.Va.1977); *See also United States v. Williams,* 544 F.2d 1215 (4th Cir. 1976) (right to two counsel under 18 U.S.C. § 3005). As pointed out in the government's brief, "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Schneckloth v. Bustamonte,* 412 U.S. 218, 237, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854 (1973).

Clearly Article IV(e) of the IAD amounts to nothing more than a procedural rule, and the right it protects in no way affects the fairness and accuracy of the factfinding procedure. Nor does it preserve or affect other due process or trial rights. Rather, it involves an unrelated right to rehabilitation without interruption in connection with incarceration on a prior sentence. Thus, a claim under IV(e) can hardly be construed as jurisdictional, *United States v. Palmer, supra.* The fact that Congress has provided a stringent remedy for violation of the rule does not alter the procedural nature or nonfundamental basis of the rule itself.

Petitioner's challenge to his plea might more appropriately be scrutinized under the rule enunciated in *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973):

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [of competence demanded of attorneys in criminal cases]."

*Williams v. State of Maryland,* 445 F.Supp. 1216 (D.Md.1978); *Strawderman v. United States, supra.*

Gray has persistently maintained that his plea is assailable on the ground that his defense counsel did not provide competent assistance. The asserted factual basis for this claim is that counsel failed to correctly evaluate and cause petitioner to exercise his rights under the IAD prior to his entering a plea of guilty on August 20, 1976. Since Article IV(e) would have provided a complete defense, it is argued that the failure to raise it cannot be interpreted as a tactical decision.

---

1. Most contrary authority has emanated from the second circuit based upon *United States v. Mauro,* 414 F.Supp. 358 (E.D.N.Y.1976), aff'd 544 F.2d 588 (2nd Cir. 1976), and is of questionable vitality in light of the reversal, albeit on other grounds, of *Mauro,* as well as the recent decision in *Edwards v. United States, supra,* wherein it was held that a violation of the IAD may not be raised for the first time in a collateral attack.

The vulnerability of a guilty plea does not depend on "whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 770–771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); *Tollett v. Henderson, supra,* 411 U.S. at 264, 93 S.Ct. 1602.

Gray's counsel is not to be faulted for his failure to perceive a potential defense under the IAD as interpreted at the district court level in *United States v. Mauro, supra,* on May 17, 1976, and published some time thereafter. Counsel for the government stated in oral argument during the *Mauro* appeal before the United States Supreme Court that "not even the defense bar saw the possibilities of the argument until it was raised in a 'stroke of genius'," at the initial *Mauro* proceedings, 22 Cr.L. 1087 (March 8, 1978). Thus, defense counsel's failure to anticipate this defense was not outside the range of contemporary, competent legal assistance. *See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Further, because of the nonfundamental basis of the claim presented, this case would not fall within the more recent exception to the *Tollett* standard enunciated in *Blackledge v. Perry,* 417 U.S. 21, 31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), wherein the very initiation of the proceeding against petitioner "operated to deny him due process of law," *Williams v. State of Maryland, supra.*

For these reasons, we would have no difficulty rejecting petitioner's challenge to his guilty plea were it to be governed by the *Tollett* standard. However, the underlying claim in this case is not of constitutional dimensions as were the claims in *Tollett* and its progeny. Thus, it seems that *Tollett* may not be the most appropriate standard for analyzing petitioner's nonfundamental claim.

A more suitable standard may be extrapolated from recent case law explicating the concept of procedural default and the policy underlying Rule 12 of the Federal Rules of Criminal Procedure. Sections (b)(1), (2) and (f) of Rule 12 provide in essence that failure to raise defenses and objections based upon defects in the institution of the prosecution or on defects in the indictment or information (other than attacks on jurisdiction or allegations that the indictment fails to charge an offense) "shall constitute a waiver thereof."

Recent cases have also established that a defendant's failure to timely object to alleged errors occurring prior to or during the trial itself precludes the later assertion of that error upon collateral attack. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), *reh. denied* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163; *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), *reh. denied* 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194; *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). The forfeiture of fundamental constitutional rights is grounded under this rule upon the absence of timely objection, and the preclusion is not dependent upon a knowing and intelligent waiver. This concept gives recognition to the substantial public interest in finality of criminal convictions. *Wainwright v. Sykes, supra,* 433 U.S. at 90, 97 S.Ct. 2497. It additionally acknowledges the government's interest in preserving convictions based upon guilty pleas and the factual integrity of voluntarily-entered pleas. These interests are particularly important in light of the fact that the vast majority of convictions in the federal criminal system (84% in 1974) are the result of pleas of guilty or *nolo contendere,* "Rule 11 and Collateral Attack on Guilty Pleas," 86 Yale L.J. 1395 (1977). Applying a forfeiture rule to claims asserting a violation of the IAD would serve these significant interests.

The Tenth Circuit Court of Appeals recently held that the IAD does not apply to transfers after trial for sentencing, *United States v. Johnson,* No. 77–1979 (10th Cir., March 31, 1978), *unpublished.* Thus, we can perceive of no instance where a violation of

the Agreement would occur after completion of the trial. Accordingly, it is equitable to require that a violation be objected to either prior to or during trial and not in a post-trial collateral proceeding.

Petitioner asserts that he had "good cause" for failing to timely object to the challenged transfers in that he was unaware of his rights under Article IV(e) prior to entering a plea of guilty. Awareness of a fundamental constitutional right is not necessarily required for a legally effective waiver. *Schneckloth v. Bustamonte, supra.* It follows that awareness need not be present for this court to determine that a statutory right has been forfeited. The public's substantial interest in the preservation of convictions based upon voluntary guilty pleas outweighs a prisoner's interest in the statutory remedy for a violation of Article IV(e). This justifies a holding of forfeiture upon a defendant's failure to object prior to entering a plea of guilty, regardless of whether or not he is aware of the *potential remedy.*

In addition to the legal conclusion that petitioner forfeited his remedy under IV(e) by failing to assert it prior to pleading guilty, the court has before it credible evidence that petitioner requested the return to Missouri state prison prior to completion of his federal prosecution so that he might receive adequate medical treatment. Not only does this negate petitioner's claim of prejudice, but, in such a case, a prisoner is estopped from claiming the remedy under Article IV(e). *United States v. Scallion,* 548 F.2d 1168, 1170 (5th Cir. 1977). This view finds implicit support in the United States Supreme Court's affirmance of *United States v. Ford, supra,* where the Court of Appeals for the Second Circuit held that Ford waived his claim under Article IV(e) by requesting his return to state prison. *United States v. Mauro,* 436 U.S. 340, 348 n. 12, 98 S.Ct. 1834, 1841, 56 L.Ed.2d 329 (1978).

Finally, we reject petitioner's contention that the court should have noted the government's violation of the IAD from the court file and apprised petitioner of his remedy thereunder before accepting his plea. It is not the function of the court to advise a defendant of every statute which might have some favorable bearing upon his case. *See United States v. Blankenship,* 548 F.2d 1118 (4th Cir. 1976), *cert. denied* 425 U.S. 978, 96 S.Ct. 2182, 48 L.Ed.2d 803; *United States v. Williams,* 544 F.2d 1215 (4th Cir. 1976).

It cannot be said that this procedural defect in the prosecution of petitioner's case had any effect whatsoever on his decision to plead guilty or on the fundamental fairness of the proceedings against him. Nor has petitioner demonstrated any actual prejudice to his rehabilitation as a result of the challenged transfers. The record reflects that petitioner clearly admitted his guilt in open court to passing a money order which was purchased by him for 50 cents and altered so that he obtained money and merchandise in the amount of 60 dollars in exchange therefor. He further admitted that he knew the money order was falsely made and that his actions were against the law.

In sum, we hold that petitioner forfeited his rights under Article IV(e) of the Interstate Agreement on Detainers by failing to raise the issue prior to entering a plea of guilty. Accordingly, he is not entitled to relief under § 2255 for the government's violation of that provision.

IT IS THEREFORE ORDERED that this action be dismissed and all relief denied; that the clerk transmit copies of this Memorandum and Order to the petitioner; to counsel for petitioner, Mr. Howard Eisberg, 15 West 10th Street, Suite 310, Kansas City, Missouri, 64105; and to the office of the United States Attorney in Topeka, Kansas.

IT IS SO ORDERED.