UNITED STATES of America,
Plaintiff-Appellee,

v.

Leroy EADDY, Defendant-Appellant.

No. 78–5127.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 12, 1978.

Decided March 22, 1979.

Rehearing Denied May 29, 1979.

Martin Gary Deutch, Southfield, Mich.
(Court-appointed), for defendant-appellant.

James K. Robinson, U. S. Atty., Christopher A. Andreoff, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before CELEBREZZE, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge.

The issue presented on this appeal is whether the district court erred in not dismissing the bank robbery indictment of appellant Leroy Eaddy, due to the failure of the Government to comply with the Interstate Agreement on Detainers (the Agreement), 18 U.S.C. App. (Supp.1978).

## I

■ In a prior appeal, *United States v. Eaddy,* 563 F.2d 252 (6th Cir. 1977) (*Eaddy I*), we remanded the case to the district court for a determination of whether a detainer was filed against Eaddy, and, if so, whether Eaddy was denied his right to a speedy trial under the provisions of the Agreement.

Upon remand, the district court determined, in an unpublished opinion entered February 7, 1978, that "a detainer was lodged against Mr. Eaddy on June 27, 1975, by the United States Marshal's Service while Mr. Eaddy was a prisoner at the Michigan State Prison at Jackson, Michigan." The district court determined that Eaddy had been notified of the detainer[1] by prison officials and advised of his rights pursuant to Article III of the Agreement.[2] Eaddy did not request a speedy trial in accordance with the precise language of Article III. However, as we pointed out in *Eaddy I,* Eaddy's counsel filed a motion on March 10, 1976, to dismiss the indictment on the ground of prejudicial delay in bringing Eaddy to trial. This motion was denied by the district court. *Eaddy I,* 563 F.2d at 254.

Relying upon this court's decision in *Ridgeway v. United States,* 558 F.2d 357 (6th Cir. 1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978), that a writ of habeas corpus ad prosequendum is not a detainer within the meaning of the Agreement, the district court concluded:

> Therefore, Mr. Eaddy, not having been transferred to the jurisdiction of this court pursuant to any provision of the Interstate Agreement on Detainers but instead, pursuant to writs of habeas corpus *ad prosequendum,* was not denied any speedy trial right under the Agreement.

1. See "Agreement on Detainers: Form I" at Appendix, *infra.*

2. Article III provides:

   (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided,* That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

   The notice given to Eaddy advised:

   You are hereby further advised that by the provisions of said Agreement you have the right to request the appropriate prosecuting officer of the jurisdiction in which any such indictment, information or complaint is pending and the appropriate court that a final disposition be made thereof. You shall then be brought to trial within 180 days, unless extended pursuant to provisions of the Agreement, after you have caused to be delivered to said prosecuting officer and said court written notice of the place of your imprisonment and your said request, together with a certificate of the custodial authority as more fully set forth in said Agreement. However, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

On May 23, 1978, the Supreme Court announced its decision in *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). In *Mauro,* the Supreme Court agreed with this court's decision in *Ridgeway,* that a writ of habeas corpus ad prosequendum is not a detainer within the meaning of the Agreement. 436 U.S. at 349 n.14, 98 S.Ct. 1834 n.14. The Court further held that where the United States has lodged a detainer against a State prisoner, thereby activating the provisions of the Agreement, a writ of habeas corpus ad prosequendum will be considered "a written request for the temporary custody or availability" of a prisoner within the meaning of Article IV(a) of the Agreement and that the United States will be bound by the terms of the Agreement. 436 U.S. at 352, 362, 98 S.Ct. at 1848.

In *Mauro,* the Supreme Court expressly held that obtaining custody over a State prisoner by means of a writ of habeas corpus ad prosequendum "in no way reduces the need for . . . prompt disposition of the charges underlying [a previously lodged] detainer." 436 U.S. at 362, 98 S.Ct. at 1848. *Mauro* mandates that, pursuant to Article IV of the Agreement, when a State prisoner, against whom a detainer has been lodged, is transferred from State to federal custody by an ad prosequendum writ for the purpose of prosecution on pending federal charges: (1) trial on the federal charges must commence within 120 days of the arrival of the prisoner in federal custody (Art. IV(c)); and (2) disposition of the pending charges must precede the return of the prisoner from federal to State custody (Art. IV(e)). 436 U.S. at 352, 98 S.Ct. 1834. *See also United States v. Dixon,* 592 F.2d 329 (6th Cir. 1979).

In the present case appellant was not brought to trial for 291 days following his September 19, 1975, transfer to federal custody. Additionally, he was shuttled back and forth between federal and State custody on two occasions after the detainer had been lodged against him, but prior to his trial on the federal bank robbery charge. Under the holding in *Mauro,* the Government's handling of Eaddy violated both Article IV(c) and (e) of the Agreement.[3]

We conclude, therefore, that the decision of the Supreme Court in *Mauro,* which was not available to the district court at the time of its February 7, 1978, decision, requires that we reverse in this case.[4]

## II

The Government makes no serious contention on this appeal that Article IV(c) and (e) of the Agreement were not violated. Instead, the Government argues that appellant waived his substantive rights under Article IV(e) by failing to state a preference as to the place of his incarceration while awaiting trial on the federal bank robbery charge.

The Agreement is designed to "encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, and complaints." Art. I. The Agreement seeks to protect a prisoner from the prejudice inherent in the lodging of a detainer. *Mauro, supra,* 436 U.S. at 358 n.25, 98 S.Ct. 1834 n.25. "Because a detainer remains lodged against a prisoner without any action being taken on it, [the prisoner] is denied certain privileges within the prison,

---

**3.** This is not a case where temporary custody was obtained at the behest of the prisoner and solely for his benefit. *See United States v. Dixon,* 592 F.2d 329 (6th Cir. 1979). Rather, each temporary custody herein was initiated by the prosecutor to further prosecution of appellant pursuant to Arts. IV(a) and V(d) of the Agreement.

**4.** Because appellant's conviction was on direct appeal when the Supreme Court announced *United States v. Mauro,* 436 U.S. 340, 98 S.Ct.

1834, 56 L.Ed.2d 329 (1978), we do not need to address the Government's contention that the *Mauro* holding should not be retroactively applied. *See Hankerson v. North Carolina,* 432 U.S. 233, 246–48, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (Powell, J., concurring); *Jenkins v. Georgia,* 418 U.S. 153, 155, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974); *Williams v. United States,* 401 U.S. 646, 665, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Mackey v. United States,* 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971).

and rehabilitation may be frustrated." *Id.* at 360, 361 & n.26, 98 S.Ct. at 1847 n.26. *See also United States v. Ford,* 550 F.2d 732, 739–40 (2d Cir. 1977), *aff'd sub nom., United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). The Agreement also seeks to reduce disruption in prisoner privileges and programs which can result when there are repeated transfers between jurisdictions. *Id.* at 742.

As stated by this court in *United States v. Dixon, supra,* 592 F.2d 329 (6th Cir. 1979), Article IV allows a prosecutor access to a prisoner held in another jurisdiction upon the prosecutor's mere written request for temporary custody or availability. Article IV(c) provides that once a prisoner has been transferred from his jurisdiction of incarceration to the custody of the prosecutor in the jurisdiction where there are charges outstanding against the prisoner, trial must commence within 120 days of the prisoner's arrival in the requesting jurisdiction. Article IV(e) provides that once the prosecutor has requested custody of a prisoner and the prisoner has been transferred to the requesting jurisdiction, disposition of all charges outstanding against the prisoner (which are the basis of a detainer) must precede the prisoner's return to his jurisdiction of incarceration. The limitations imposed by Article IV(c) and (e) upon the prosecutor of a "requesting jurisdiction" are intended to prevent prosecutorial abuse of the simplified method for obtaining custody over a prisoner held in another jurisdiction.

Article IV is applicable in situations where a detainer has been lodged against a prisoner incarcerated in another jurisdiction and, by its terms, becomes operative upon presentation of a written request for temporary custody or availability by the prosecutor. Article IV and the sanctions contained therein are presented in mandatory terms. Article IV(c) provides: "[T]rial *shall* commence within one hundred and twenty days of the arrival of the prisoner in the receiving state . . .." (Emphasis added.) Article IV(e) provides: "If trial is not had . . . prior to the prisoner's being returned to the original place of imprisonment . . . [the] indictment, information, or complaint *shall* not be of any further force or effect, and the court *shall* enter an order dismissing the same with prejudice." (Emphasis added.) The use of the mandatory term "shall" in connection with the above provisions demonstrates that the States which are parties to the Agreement have the affirmative duty of complying with its terms.

Despite the mandatory language of Article IV, the rights created by the Agreement are for the benefit of the prisoner. They exist for his protection and are personal to him. *United States v. Ford, supra,* 550 F.2d at 742; *Gray v. Benson,* 443 F.Supp. 1284, 1293 (D.Kan.1978), *supplemented,* 458 F.Supp. 1209 (D.Kan.1978). We conclude, therefore, that the rights of a prisoner under the Agreement may be waived.

In all cases where a prisoner is aware of and understands the provisions of Article IV, as well as his rights thereunder, a prisoner can waive those rights, so long as the waiver is voluntary.[5] *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We also hold the substantive rights accorded to a prisoner under Article IV may be waived, even though the prisoner is not aware of those rights, where there is an affirmative request to be treated in a manner contrary to the procedures prescribed by Article IV(c) or (e). *United States v. Ford, supra; United States v. Scallion,* 548 F.2d 1168 (5th Cir. 1977), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978). *Compare United States v. Dixon,* 592 F.2d 329 (6th Cir. 1979).

In *United States v. Ford, supra,* the Second Circuit rejected a prisoner's argu-

---

**5.** For reasons set forth in this opinion we cannot agree with the court in *United States v. Mauro,* 414 F.Supp. 358 (E.D.N.Y.), *aff'd,* 544 F.2d 558 (2d Cir. 1976), *rev'd on other grounds,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), that waiver of rights under the Agreement is to be governed solely by the rule of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

ment that Article IV(e) of the Agreement had been violated when federal authorities, having previously filed a detainer against appellant Ford, brought him into federal custody for arraignment by a writ of habeas corpus ad prosequendum but thereafter returned Ford to State custody prior to trial on federal charges pending against him. Because the prisoner in *Ford* "requested to be returned to Massachusetts custody, so that he and his attorney could more conveniently prepare for trial, and because his family was in Massachusetts," the court concluded that Ford waived his right to remain in federal custody under Article IV(e). 550 F.2d at 735, 742.

The Third Circuit was presented with circumstances substantially similar to those in *Ford,* in *United States v. Scallion, supra.* In *Scallion,* the court held:

> Although the record supports Scallion's allegation that he was not tried before his return to New York on July 29, 1974, this return was at his own request in order to be present for a parole hearing. Accordingly, we hold that he is estopped from [asserting a violation of IV(e)]. 548 F.2d at 1170.

There is no indication in either *Ford* or *Scallion* that the prisoner knew of his rights under Article IV(e). However, it is clear from the facts surrounding both Ford's and Scallion's return to State custody that neither would have elected to remain in federal custody had they known of their right to do so. Under such circumstances, we agree that a prisoner may be held to have waived his substantive rights under the Agreement.

■ In the present case, appellant's attorney did not request that his client be returned to State prison at Jackson, Michigan. Rather, counsel indicated that he did not care where Eaddy was held pending trial on the federal charges. Because there was no expressed preference as to appellant's place of incarceration, the Government now contends that appellant waived his right under Article IV(e) to a final disposition of the outstanding bank robbery charge prior to his return to State custody. We do not read the mandatory language of Article IV as requiring a prisoner to make

an affirmative request as to the situs of his incarceration, following his transfer to the requesting jurisdiction for trial on outstanding charges, in order to invoke the sanctions of the Agreement.

■ The contention made by the Government would shift the burden of compliance with the provisions of the Agreement away from the Government, where Congress placed it, and onto the prisoner. This is contrary to the intent of the Agreement and to the obligatory language of Article IV. We conclude that appellant did not waive his substantive rights under Article IV(e) by failing to state a preference as to his place of incarceration. We note there is no evidence that appellant knew of his Article IV rights and thereafter voluntarily relinquished them. As we have previously observed, the "Agreement on Detainers: Form I" only informed appellant of the existence of a detainer and his right to speedy trial under Article III. Nothing in that document or the record before us indicates that appellant also was informed of his rights under Article IV.

### III

■ The Government further contends that appellant forfeited his right to object to the violation of Article IV(c) and (e) by failing to raise these objections prior to trial. This court held to the contrary in *Eaddy I* and that holding is the law of this case. 563 F.2d at 255.

In *Mauro,* 436 U.S. at 364–65, 98 S.Ct. at 1849, the Supreme Court said:

> Finally, we agree with the Court of Appeals in No. 77–52 that respondent Ford's failure to invoke the Agreement in specific terms in his speedy trial motions before the District Court did not result in a waiver of his claim that the Government violated Art. IV(c). The record shows that from the time he was arrested Ford persistently requested that he be given a speedy trial. After his trial date had been continued for the third time, he sought the dismissal of his indictment on the ground that the delay in bringing him to trial while the detainer remained lodged against him was causing him to be denied certain privileges at the state pris-

on. We deem these actions on Ford's part sufficient to put the Government and the District Court on notice of the substance of his claim.

In the present case, as pointed out in *Eaddy I,* 563 F.2d at 254, appellant filed a motion on March 10, 1976, to dismiss the indictment on the ground of prejudicial delay in bringing him to trial. Although his motion was not framed in the precise language of the Agreement, we deem Eaddy's motion "sufficient to put the Government and the District Court on notice of the substance" of his Article IV(c) claim. *Mauro,* 436 U.S. at 365, 98 S.Ct. at 1849. The Government has offered no evidence that Eaddy slept on his Article IV(c) rights through lack of diligence.

We limit our holding on the Art. IV(c) claim to the facts of the present case. If Eaddy had not raised the speedy trial question in the district court, he could not raise his Article IV(c) claim for the first time on appeal.

As for his Article IV(e) claim, Eaddy did not assert a violation of Article IV(e) until his appeal in *Eaddy I.* We hold that he forfeited his right to raise this violation by failing to assert it prior to or during trial in the district court.

The Agreement does not specify when a prisoner must assert its operative provisions. It does not follow, however, that in the absence of such a provision the sanctions of Article IV are triggered automatically when the Agreement is violated. *United States v. Palmer,* 574 F.2d 164, 167 (2d Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978). Neither does a violation of Article IV automatically strip the trial court of subject matter jurisdiction over the underlying criminal charges upon which the detainer was lodged. *Id.*

The Agreement contains a set of procedural rules designed to facilitate the disposition of outstanding charges against a prisoner, to guard against prosecutorial abuse of the privilege of easy access to prisoners, and to protect prisoners from the prejudice caused by the lodging of detainers. The rights created by Article IV(c) and (e) are purely statutory. *Gray v. Benson, supra,* 458 F.Supp. at 1213.

A violation of either Article IV(c) or (e) stems from the administrative handling, by the requesting jurisdiction, of a prisoner incarcerated in another jurisdiction after the requesting jurisdiction has lodged a detainer against the prisoner, but prior to trial on the underlying criminal charges. A violation of Article IV is similar to a "defect in the institution of a prosecution," which must be raised before trial under Fed.R.Crim.P. 12. *Gray v. Benson, supra,* 458 F.Supp. at 1214. *See also* 8 Moore's Federal Practice ¶ 12.01 (2d ed. 1978). We conclude that prisoner rights created by the Agreement are waived by forfeiture or default if not raised prior to or during trial. If not timely raised in the district court they ordinarily cannot be raised for the first time on appeal.

We think our holding amounts to a reasonable accommodation between two competing interests. On the one hand, the mandatory language of Article IV, together with its stringent penalties, manifests an intent that party States adhere strictly to procedures and time limits provided in the Agreement. On the other hand, there is substantial public interest in finality of criminal convictions. To allow a prisoner to assert violations of the Agreement beyond the trial stage, without a showing of cause, would "encourage piecemeal litigation of claims of error . . . and undercut the policy of achieving prompt and final judgments." *United States v. Scallion, supra,* 548 F.2d at 1174.

The decision of the district court is reversed and the case is remanded to the district court with instructions to dismiss the indictment, pursuant to Article V(c) of the Agreement.

## APPENDIX

### Agreement on Detainers: Form I

#### (Dated January 20, 1978)

CSO–221A

In duplicate. One copy of this form, signed by the prisoner and the warden should be retained by the warden. One copy, signed by the warden should be retained by the prisoner.

NOTICE OF UNTRIED INDICTMENT, INFORMATION OR COMPLAINT AND OF RIGHT TO REQUEST DISPOSITION

Inmate Leroy EADDY, No. 122365, Inst. SPSM

Pursuant to the Agreement on Detainers, you are hereby informed that the following are the untried indictments, informations, or complaints against you concerning which the undersigned has knowledge, and the source and contexts of each.

Eastern District of Michigan, Detroit, Michigan—Unarmed Bank Robbery.

You are hereby further advised that by the provisions of said Agreement you have the right to request the appropriate prosecuting officer of the jurisdiction in which any such indictment, information or complaint is pending and the appropriate court that a final disposition be made thereof. You shall then be brought to trial within 180 days, unless extended pursuant to provisions of the Agreement, after you have caused to be delivered to said prosecuting officer and said court written notice of the place of your imprisonment and your said request, together with a certificate of the custodial authority as more fully set forth in said Agreement. However, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Your request for final disposition will operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against you from the state to whose prosecuting official your request for final disposition is specifically directed. Your request will also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein and a waiver of extradition to the state of trial to serve any sentence there imposed upon you, after completion of your term of imprisonment in this state. Your request will also constitute a consent by you to the production of your body in any court where your presence may be required in order to effectuate the purposes of the Agreement on Detainers and a further consent voluntarily to be returned to the institution in which you are now confined.

Should you desire such a request for final disposition of any untried indictment, information or complaint, you are to notify supervisor of Records of the institution in which you are confined.

You are also advised that under provisions of said Agreement the prosecuting officer of a jurisdiction in which any such indictment, information or complaint is pending may institute proceedings to obtain a final disposition thereof. In such event, you may oppose the request that you be delivered to such prosecuting officer or court. You may request the Governor of this state to disapprove any such request for your temporary custody but you cannot oppose delivery on the grounds that the Governor has not affirmatively consented to or ordered such delivery.

DATED: 6–30–75    Charles E. Egeler, Warden
      (insert name and title of custodial authority)
        BY: /s/ CHARLES E. EGELER
   RECEIVED        Warden
DATE 7–1–75
INMATE  /s/ LEROY EADDY      NO. 122365