George ROBERSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 92–SC–436–MR.

Supreme Court of Kentucky.

Dec. 22, 1994.

Larry H. Marshall, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Dina Abby Jones, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

LEIBSON, Justice.

In August 1989, George Roberson was charged in a five-count indictment with sexual offenses against the half-sister of his twin daughters. One charge of sexual abuse was alleged to have occurred as Roberson drove the victim and her two half-sisters from his home in Louisville to their home in Jeffersonville, Indiana on June 24, 1989. While in the car, Roberson abused the 11–year old girl both in Indiana and Kentucky. He was also charged with first-degree rape, two counts of first-degree sodomy and another count of sexual abuse, which occurred during two visits to Roberson's residence by the victim on June 24, 1989, and in the summer of 1987.

Prior to trial in Kentucky, Roberson pled guilty in Indiana to one charge of child molestation. Roberson claims he pled guilty not because he had done anything wrong but in anticipation of probation and a resulting return to his wife and family. He further claims that his Indiana attorney told him what he said in Indiana could not be used against him in Kentucky.

Roberson was tried by a Jefferson County jury beginning October 24, 1991. He was found guilty of one count of first-degree sexual abuse on the trip from Louisville to Jeffersonville on June 24, 1989, and received a five-year sentence, to run concurrently with the four years he received in Indiana. The jury was unable to reach a verdict on the other four charges. Roberson appealed the conviction to the Court of Appeals as a matter of right.

Beginning March 17, 1992, Roberson was retried on the four charges upon which the jury could not agree in his October 1991 trial. The second jury found Roberson guilty of all four charges and he was sentenced to fifty years each for first-degree rape and two counts of first-degree sodomy and to five years for first-degree sexual abuse. The sentences were run concurrently for a total of fifty years. Roberson appeals to this Court as a matter of right.

## I. LAW OF THE CASE

■ The Court of Appeals affirmed Roberson's sexual abuse conviction in a September 10, 1993, unpublished opinion, rendered while Roberson's appeal of his conviction on the other four charges at his second trial was pending in this Court. Roberson moved for discretionary review of the decision of the Court of Appeals, and this Court denied review by order dated January 26, 1994. The two issues addressed by the Court of Appeals in that opinion are also issues in this appeal.

The Commonwealth claims that the "law of the case" doctrine precludes Roberson from presenting his first two issues, those addressed by the Court of Appeals on appeal of Roberson's first conviction, in this Court. The Commonwealth is mistaken. The Court of Appeals opinion affirms Roberson's conviction on one of his original five charges. This appeal is from Roberson's conviction of four *different* charges.

■ The law of the case doctrine applies only to the *same* case. If the Court of Appeals had reversed Roberson's original conviction and remanded the case to the trial court on one issue, but affirmed on another issue, and Roberson did not seek discretion-ary review of the affirmed issue, the law of the case doctrine would apply on appeal of Roberson's retrial *of the remanded case.* That is what occurred in *Williamson v. Commonwealth,* Ky., 767 S.W.2d 323 (1989) and *Gossett v. Commonwealth,* Ky., 441 S.W.2d 117 (1969), cited by the Commonwealth, but that did not occur here. As was the case in *Hendrickson v. Commonwealth,* Ky., 259 S.W.2d 1, 2 (1953), although some issues are similar and "the same appellant is here, the offense is entirely separate and distinct from that which was the subject of the former appeal." This "is the first and only appeal of this case," *Id.,* and is not the same case as that decided by the Court of Appeals.

## II. INTERSTATE AGREEMENT ON DETAINERS

Roberson first claims that the indictment against him should have been dismissed for violation of the time limitations of the Interstate Agreement on Detainers (IAD), KRS 440.450.

After a detainer is filed, the IAD permits both the prisoner and the prosecuting authority which filed the detainer to initiate proceedings to bring the prisoner to trial. If the prisoner requests final disposition of the charges, trial must be held within 180 days after the prosecution and the appropriate court are notified of his request. KRS 440.450, Art. III(1). Roberson completed Article III forms March 25, 1991, after a detainer had been lodged against him in Indiana by Kentucky authorities. Thus, under the provisions of Article III, as the Commonwealth concedes, his trial was to be held no later than September 21, 1991. If the prosecuting authority initiates proceedings, the prisoner must be tried within 120 days after his arrival in the jurisdiction seeking to try him. KRS 440.450, Art. IV(3). The Commonwealth requested temporary custody of Roberson pursuant to Article IV, and he arrived in Jefferson County May 6, 1991. Thus, under Article IV, as the Commonwealth concedes, Roberson's trial was to be held no later than September 3, 1991.

■ Roberson's trial was held October 24, 1991, outside both IAD time limits. However, both Articles III and IV provide that

reasonable and necessary continuances, pushing a trial date past the IAD time limits, may be granted for good cause shown in open court. If the IAD is violated, the trial court is compelled to dismiss the charges with prejudice. KRS 440.450, Art. V(3); *Lovitt v. Commonwealth*, Ky., 592 S.W.2d 133 (1979).

In March 1991, the case was assigned for trial on July 9, 1991, a date within the IAD limits. The July 11, 1991, docket entry shows the case was reassigned for trial October 23, 1991; the trial actually began October 24, 1991. The July 1991 continuance was the only one which occurred after the IAD time limitations were triggered. There is nothing in the record from July 9, 1991, indicating what transpired on that day, but subsequent hearings give some indication.

At the beginning of Roberson's first trial, he raised the question of a possible IAD violation but stated he was unable to fully argue for dismissal of the indictment because of his inability, despite repeated attempts, to secure the IAD documents. The trial judge preserved Roberson's objection until after the trial to enable him to obtain the necessary documents. After Roberson's conviction for sexual abuse, he obtained copies of the IAD documents and filed a motion to dismiss the indictments based on violations of the IAD. The trial judge held two hearings in January and February 1992, pursuant to the motion to dismiss, to determine how the case came to be reassigned for trial from July 1991 to October 1991.

At the end of June 1991, the prosecutor and defense counsel originally assigned to the case met in the courthouse hall. After an unsuccessful attempt at negotiating a plea, the attorneys learned they were both leaving their jobs for private employment before the scheduled trial date. The two agreed to convert the scheduled trial date, July 9, 1991, to a pretrial date and did so in the court clerk's office. Defense counsel did not advise his client of this proceeding.

A prosecutor and Roberson's new defense counsel appeared for the pretrial conference on July 9, 1991, at which time the trial judge scheduled trial for October 24, 1991. The new prosecutor assigned to the case had not yet begun his employment, and the prosecutor at the pretrial conference was asked to stand-in only to get a trial date and had not reviewed the file. The stand-in prosecutor testified that the date was reassigned because both the defense counsel and the prosecutor had left their respective jobs, and she further testified that the IAD was not mentioned on July 9. When asked whether she had sought a trial date to coincide with the victim's school schedule, the prosecutor answered in the affirmative and said that that was the second date that was originally offered.

The trial court focused on whether the conversion in the clerk's office of July 9, 1991, from a trial to a pretrial date was for good cause shown in open court. He found that "open court" means in the courtroom and in the clerk's office. He held that cause was shown for granting the continuance and that it inured to Roberson's benefit, as well as the Commonwealth's, because Roberson would not have been happy to have a new attorney nine days before trial. He also assumed that Roberson was advised of the continuance and assumed that he could have objected to it.

The IAD provides:

[F]or good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

KRS 440.450, Art. III(1) and Art. IV(3).

 The conversion of the trial date to a pretrial date in the clerk's office without the trial judge present did not occur in "open court" within the meaning of the IAD. The most lenient reading of the IAD does not require a formal proceeding in court, but does require, at least, that the prisoner or his counsel, and a judge, be present. *Stroble v. Anderson*, 587 F.2d 830 (6th Cir.1978). However, the conversion did not put the trial outside the IAD time limits. That was done on July 9, at the pretrial conference with the trial judge and attorneys for both sides being present, thus satisfying the open court requirement.

■ Although the record does not reflect the exact reason for the continuance, testimony indicated it was because both the prosecutor and defense counsel left their respective positions shortly before trial. The trial judge found this to be good cause, and we do not disagree with his determination that a new attorney a week before trial is good cause for a continuance.

However, the trial court did not address whether there was good cause for the length of the continuance and whether a continuance beyond the IAD limitation was necessary or reasonable. The Commonwealth also does not address this issue in its brief. At the time the continuance was granted, July 9, 1991, it was approximately two months until the Article IV time limit, triggered by the Commonwealth, ran on September 3, 1991. A continuance could have been granted which would have allowed new defense counsel time to prepare while keeping the trial within the IAD time limits. The record is insufficient to determine whether continuing the case *to October 24, 1991,* was for good cause and was necessary or reasonable.

■ The next question to be answered is whether Roberson waived his rights under the IAD. "[T]he States which are parties to the Agreement have the affirmative duty of complying with its terms." *United States v. Eaddy,* 595 F.2d 341, 344 (6th Cir.1979). The prisoner need not demand that the prosecutor and court comply with the IAD. Such a requirement "would shift the burden of compliance with the provisions of the Agreement away from the Government, where Congress [and the Legislature] placed it, and onto the prisoner." *Id.* at 345. The Commonwealth, either the trial judge or the prosecutor, had the duty of keeping track of the IAD time limits and complying with them.

■ However, the rights of a prisoner under the IAD may be waived. In *Eaddy, supra,* cited by the Commonwealth for the proposition that Roberson waived his rights, the issue was whether Eaddy waived his rights under the IAD when his defense counsel did not express a preference as to where Eaddy should be incarcerated. The Court found that Eaddy did *not* waive his rights under the IAD.

The 6th Circuit held in *Eaddy* that if "a prisoner is aware of and understands the provisions of [the IAD], as well as his rights thereunder, a prisoner can waive those rights, so long as the waiver is voluntary." *Id.* at 344. A prisoner may waive his IAD rights, even though he is not aware of those rights, "where there is an affirmative request to be treated in a manner contrary to the procedures." *Id.* Roberson was apparently not present on July 9, 1991, and there is no contention that his new defense counsel was aware at that time that the IAD had been triggered. Despite repeated attempts, defense counsel was unable to obtain the IAD documents from the Commonwealth to see when the time began running until after Roberson's first trial, at which time he moved to dismiss the charges. The Commonwealth does not contend that Roberson affirmatively requested a trial date outside the IAD time limits. Rather, he did not object when a trial date outside the IAD time limits was suggested.

In the other case the Commonwealth cites for the proposition that Roberson waived his IAD rights, *Brown v. Wolff,* 706 F.2d 902 (9th Cir.1983), the court states:

A waiver is not ordinarily found from mere silence. The Agreement puts no affirmative obligation on the prisoner to alert the court of his IAD rights. We think it inappropriate to impose such an obligation.

A prisoner may waive his IAD rights, however, if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD. *Id.* at 907.

The court went on to find that Brown waived his IAD right to a speedy trial when, before the IAD time had run, he filed a habeas petition and explicitly stipulated, while clearly aware of the IAD time limits, that if the petition were not decided by a certain date, the trial could be continued. Excluding the periods of the continuances, Brown was tried within the IAD time limits. Under those circumstances, the court determined Brown had waived his IAD rights.

Roberson did not affirmatively request treatment contrary to the provisions of the

IAD. The most that can be said regarding Roberson's possible waiver is that defense counsel did not object to the October trial date. This is a far cry from Brown's explicit stipulation that the case could be continued when he was obviously aware of the IAD time limits.

The circumstances here are remarkably similar to *People v. Allen*, 744 P.2d 73 (Colo. 1987). In *Allen*, the trial judge suggested a trial date which was well beyond the time limits of both Articles III and IV of the IAD. The defendant, his attorney, and the district attorney were present, and both attorneys said that trial date would be "fine." No one mentioned the time requirements of the IAD. The defendant later filed a motion to dismiss based on the prosecution's failure to bring him to trial within the 120–day period of Article IV. After a hearing, the judge concluded "the prosecution had failed to meet its burden of assuring compliance with the IAD," *Id.* at 75, and dismissed the charges against the defendant.

The Colorado Supreme Court found that waiver of IAD rights "must be voluntary, but need not be knowing and intelligent" and that even under the voluntariness standard applicable to statutory rights, "mere silence by the defendant and his attorney when the trial date is set does not amount to waiver." *Id.* Although an affirmative request by defense counsel for a trial date beyond the speedy trial period can waive a defendant's IAD rights, the "waiver concept is based on the fact that a defendant's participation in selecting a trial date would contribute directly to any violation. . . ." *Id.* at 76. Citations omitted.

> Like the Colorado Supreme Court, we too cannot say that the defendant's acquiescence in the . . . trial date[] directly contributed to the speedy trial violation. Instead, . . . the trial was set beyond the time allowed by statute because the prosecution was unaware of the precise character of the defendant's speedy trial rights and failed to comply with its obligations under the Interstate Agreement. *Id.* Citations omitted.

As long as Roberson did not affirmatively request the court to follow a procedure inconsistent with the IAD, it was not necessary that he demand the court comply with the IAD, since, as stated previously, the burden of complying with the IAD is on the Commonwealth.

Roberson did not waive his IAD right to a speedy trial. Although the continuance was granted for good cause in open court, whether the length of the continuance was for good cause and was necessary or reasonable is questionable. Accordingly, we remand this case to the trial court to determine whether continuing the case beyond the IAD time limitation was for good cause and was necessary or reasonable.

## III. ADMISSIBILITY OF INDIANA GUILTY PLEA

Roberson next argues that the trial court committed reversible error in failing to exclude evidence relating to his Indiana guilty plea. James Snook, an Indiana probation officer, interviewed Roberson while performing a presentence investigation. During the interview, Roberson said he would plead guilty to what was described as happening in Indiana but not what happened in Kentucky, and he said he was sorry and it would never happen again. Snook testified to these statements. The prosecutor also read to the jury a portion of Roberson's Indiana guilty plea proceedings wherein he admitted his guilt to the charge of child molestation.

In Roberson's first trial, he was convicted of sexually abusing the victim while in his car in Kentucky on June 24, 1989. At the first trial, when Roberson moved to exclude evidence of the Indiana conviction, the prosecutor claimed it was admissible as a common scheme or plan and the trial court allowed the evidence to be introduced. Evidence from Indiana that Roberson sexually abused the same victim in the same car the same day as one of the charged offenses was properly found to be admissible in the first trial as part of a common plan.

In his second trial, Roberson was no longer being tried for sexually abusing the victim in the car on June 24, 1989. Two of the charges did however stem from sexual contact with the same victim on the same day as

the offense specified in the Indiana guilty plea, although this sexual contact was of a different nature and occurred in Roberson's home rather than his car. At the second trial, Roberson moved to exclude the Indiana conviction and the statements made during the presentencing investigation "as I did at the last trial." The trial court overruled the motion and there was no further discussion regarding grounds for admitting or excluding the evidence.

■ Roberson's motion to exclude the Indiana conviction preserved the issue of its admissibility for appellate review. The issue is whether the evidence was admissible as part of a common plan or scheme or to prove motive, opportunity or intent. KRE 404(b)(1).

The 1989 charges and the Indiana act involved sexual contact with the same victim on the same day. The fact that the victim and the date of the crimes were the same, the crimes were related in nature, and the crimes were part of a continuing course of conduct, raises reasonable inferences bearing on motive, opportunity, intent and common plan or scheme. The trial judge did not err in admitting evidence relating to the Indiana conviction.

■ Roberson next claims that he pled guilty in Indiana due to ineffective assistance of counsel. He does not ask us to vacate his Indiana guilty plea, which we could not do no matter how urgent the request, but asks us to exclude evidence regarding the guilty plea because the probative value is outweighed by its unduly prejudicial nature where the voluntariness of the plea is called into question.

In order to establish ineffective assistance of counsel with respect to a guilty plea, Roberson must show there exists a "reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Although Roberson claims it is obvious that if he had known his guilty plea would have been used against him in Kentucky, he quite likely would have chosen to face trial rather than admitting to child molestation, this claim is unsupported

by Roberson's testimony regarding his guilty plea.

Assuming that his Indiana counsel did advise him his guilty plea could not be used in Kentucky, a "guilty plea that is brought about by a person's own free will is not less valid because he did not know all possible consequences of the plea...." *Jewell v. Commonwealth*, Ky., 725 S.W.2d 593, 594 (1987). Citation omitted.

The Indiana courts are the proper forum to attack the Indiana conviction and to question the effectiveness of Indiana counsel. The trial court was within his discretion in allowing evidence relating to a valid conviction from another state.

■ Roberson also claims that statements made during a presentence investigation pursuant to a plea agreement should not be used against him. It may well be against public policy to use statements made pursuant to a withdrawn guilty plea, as Roberson argues, but in this case Roberson pled guilty and the public policy evidenced by KRE 410 is not called into question.

## IV. IRRELEVANT EVIDENCE

Roberson next claims he was denied due process by the introduction of irrelevant evidence. Roberson did not preserve these alleged errors for appellate review by contemporaneous objection.

■ The victim and her mother testified that the victim did not visit Roberson's home from the summer of 1987 until June 24, 1989, and the prosecutor commented on this testimony in his closing. An earlier pleading indicated that the victim had visited Roberson's home at a later date in 1987. Thus, Roberson claims the testimony was improper. The witnesses' inconsistent memory and testimony at trial were proper matters for impeachment, but their testimony was not inadmissible, particularly when there was no objection.

Roberson also objects to a number of comments during the testimony of the victim's mother, as well as to some of the testimony of a police detective. Roberson did not object to any of these alleged errors at trial,

thus they are not preserved for appellate review. Nor do they rise to the level of "manifest injustice" required before this Court may grant relief for unpreserved errors. RCr 10.26.

## V. CLOSING ARGUMENT

Roberson's final claim of error is that he was denied due process of law by improper, prejudicial and inflammatory comments during the prosecutor's closing. Other than objecting to one of the prosecutor's statements, these alleged errors were not preserved for appellate review by contemporaneous objection.

 Roberson did object when the prosecutor asked, "Who would plead guilty to child molestation charges if they weren't true?" At the bench conference following the objection, the prosecutor stated that he was trying to rebut Roberson's defense that he pled guilty to get home to his family. The trial judge, without being requested to do so by Roberson, admonished the jury that the closing arguments were not evidence. Although Roberson sought no further relief and thus did not preserve this alleged error for appellate review, the prosecutor's comment on Roberson's guilty plea was not improper.

During Roberson's closing, he argued that the victim's claim of abuse at Roberson's home on June 24, 1989, was improbable because there were many people at the house for a family barbecue. In refuting this line of argument, the prosecutor stated,

> And we heard from the defendant. I'll tell you who we did not hear from. We did not hear from any of those other adult children who were at that barbecue. We did not hear from Joanne [Roberson's wife]. Yes, she's in a wheelchair. There are people up here in wheelchairs every day. We didn't hear from these folks and I think that's important.

Although the prosecutor should not have commented on the failure of Roberson's wife to testify, it was an isolated comment which does not rise to the level which caused this Court to reverse the conviction in *Gossett v. Commonwealth*, Ky., 402 S.W.2d 857 (1966). Roberson did not contemporaneously object

to the comment, which could possibly have been cured by an admonition to the jury.

In any consideration of alleged prosecutorial misconduct, particularly, as here, when the conduct occurred during closing argument, we must determine whether the conduct was of such an "egregious" nature as to deny the accused his constitutional right of due process of law. *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407, 411 (1987).

The prosecutor's isolated reference to the failure of Roberson's wife to testify did not deprive him of a fair trial.

Roberson also did not object to the other errors he now alleges occurred in the prosecutor's closing argument. The errors, if there were any, were not "palpable errors" affecting Roberson's "substantial rights" resulting in "manifest injustice." RCr 10.26.

Accordingly, we have affirmed the substantive issues in this case. However, we suspend finality pending further hearing and decision by the trial court in conformity with this decision on the question of whether the case was continued in violation of the IAD. The decision of the trial court on this issue is subject to further appeal.

*All concur.*