**Nathaniel WARD III, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2000–CA–000186–MR.**

Court of Appeals of Kentucky.

March 23, 2001.

Rehearing Denied June 8, 2001.

Discretionary Review Denied Jan. 9, 2002.

**400**

Frank W. Heft, Jr., Louisville, KY, brief for appellant.

Albert B. Chandler III, Attorney General of Kentucky, J. Hamilton Thompson, Assistant Attorney General, Frankfort, KY, brief for appellee.

Before BARBER, COMBS, and McANULTY, Judges.

*OPINION*

COMBS, Judge:

Nathaniel Ward, III, appeals from the judgment of the Jefferson Circuit Court entered on December 21, 1999, convicting him of second-degree robbery and third-degree escape pursuant to his conditional plea of guilty entered in accordance with Kentucky Rule of Criminal Procedure (RCr) 8.09. Ward was sentenced to seven years' imprisonment to run consecutively to a sentence that he is currently serving in Tennessee. In his plea, he reserved the right to appeal the trial court's denial of his motion to dismiss the indictments on the ground that the Commonwealth had failed to comply with the Interstate Agreement on Detainers Act (IAD), codified at Kentucky Revised Statutes (KRS) 440.450. After a review of the IAD and the applicable authorities, we conclude that the trial court did not err in denying the motion. Thus, we affirm.

On June 23, 1997, Ward acted as a "look-out" while his brother, Norris Ward, armed with a hand gun, demanded money from four employees of a pizza parlor. Ward was indicted for the crime of first-degree robbery (KRS 515.020) under a complicity theory and was originally held under a $50,000 bond. Based on Ward's rather young age of nineteen years, his limited participation in the robbery, and the fact that he had no prior felony record,

the trial court granted his request to be released to the Home Incarceration Program (HIP) pending trial. In December 1997, Ward was reported absent from HIP, and a bench warrant was issued for his arrest.

Ward's whereabouts remained unknown for many months. Meanwhile, on April 10, 1998, Norris Ward pled guilty to one count of first-degree robbery and two counts of third-degree assault; he was sentenced to serve a total of 12 years. While at large, Nathaniel Ward committed the offense of aggravated robbery in Tennessee. He pled guilty to that crime and was sentenced to serve eight years in prison.

On March 31, 1999, while incarcerated in Tennessee, Ward completed IAD forms to seek a final disposition of the charges pending against him in Kentucky. The forms contained the information required by Article III of the act and were addressed to R. David Stengel, Commonwealth's Attorney. The forms were witnessed and signed by prison officials on April 2, 1999, but there is no evidence of what happened to the forms after Ward entrusted them to the warden of the Tennessee correctional facility where he was serving his sentence; however, there is no dispute that Ward's request for a speedy disposition of the charges pending against him in Kentucky was not received by either the prosecutor or the Jefferson Circuit Court.

The record does not reveal how or when Kentucky authorities learned of Ward's confinement in Tennessee. However, Ward was transported to Kentucky to face the outstanding robbery and escape charges on May 25, 1999, pursuant to a Governor's Warrant. On June 4, 1999, a trial date of October 19, 1999, was set in Division 8 of the Jefferson Circuit Court where the robbery indictment was pending. The video tapes contained in the record on appeal do not include the proceedings conducted on June 4, 1999. When Ward later moved to dismiss the indictments, the prosecutor, in support of a waiver argument, stated that both Ward and his attorney were present when the trial date was scheduled. Ward did not then—nor does he presently in his brief—suggest that he was not in court that day or that he was not represented by counsel.

The record reveals that on July 14, 1999, Ward and his counsel were again in court on his pre-trial motion to suppress his statement to police. The hearing on the motion was continued to August 25, 1999, at which time both Ward and his counsel were once again present in court. On July 19, 1999, Ward was arraigned on the *escape charge* in *Division 9* of the Jefferson Circuit Court. At a pre-trial hearing on August 30, 1999, in Division 9, Ward's counsel informed the judge of the pending indictment for *robbery* in *Division 8*, and the date of October 19 was set for the trial of the robbery charge. Counsel agreed to November 1, 1999, as an appropriate date for another pre-trial conference on the escape charge. From our review of the record, it appears that Ward and his attorney were in the Jefferson Circuit Court on no less than five different occasions during June, July, and August of 1999. At no time did either Ward or his counsel express any dissatisfaction with the trial date of October 19, 1999; nor did they raise an objection that that date fell outside the time limits of the IAD.

On the day of trial, Ward for the first time asserted that the trial court had lost jurisdiction to try him and moved for a dismissal of the charges on the ground that he had not been tried within 180 days of his March 31 request for a speedy disposition of the charges—nor within 120 days of his return to Kentucky on May 25. The Commonwealth objected for several

reasons: the fact that the motion was not in writing and that it (the Commonwealth) had never received the IAD forms. The trial court looked through its file and did not find a copy of the IAD request. It denied the motion. Ward then entered his conditional plea, and the trial court allowed him to file his copies of the IAD forms in the record.

 Ward's appeal concerns the proper interpretation of the IAD, a statutory scheme which prescribes procedures by which an out-of-state prisoner may demand the speedy disposition of charges pending against him in Kentucky (Article III) and procedures by which a prosecutor can secure the presence of a prisoner detained in another state for disposition of an outstanding charge (Article IV). Enacted "to eliminate potential abuses of the detainer system," *Yost v. Smith*, Ky., 862 S.W.2d 852, 853 (1993), the IAD is a "congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 709, 66 L.Ed.2d 641, 650 (1981).

KRS 440.450, Article III, provides in pertinent part:

> (1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, ... on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment....

After an inmate gives the request to the warden having custody of him, the statutory scheme requires the warden to "promptly forward" the request "to the appropriate prosecuting official and court by certified mail, return receipt requested." *Id.*, Art. III(2). If the inmate is not tried within 180 days, the IAD provides that the "indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." *Id.*, Art.III(4).

Ward insists that he did all that was required of him under Article III when, on March 31, 1999, he filled out the appropriate forms containing all the information required with respect to his Tennessee imprisonment and caused them to be delivered to the warden where he was incarcerated. Because he was not tried within 180 days of March 31, 1999, or, at the latest, within 180 days of April 2, 1999 (when the forms were witnessed and signed by the prison officials), he argues that the trial court was required by the plain terms of the statute to afford him the relief guaranteed by the IAD and to dismiss the two indictments. Ward further insists he was under no obligation to remind the prosecutor or trial court of his request for final disposition within the 180 days prescribed by the statute and that his failure to bring the matter to the court's attention did not amount to a waiver of his rights. Finally, he contends that any failure of the Tennessee prison officials to comply with that portion of the IAD requiring them to notify the proper court and prosecutor should not inure to his detriment or defeat his rights. Contrary to his arguments, it is apparent that Ward's speedy-trial rights were not triggered prior to his motion to dismiss. In the alternative, they were nonetheless waived by his subsequent course of conduct and acquiescence to a trial date after the IAD's time limits.

■ Ward's argument that the 180–day period was triggered on either March 31, 1999, or on April 2, 1999, is fundamentally flawed. The record reveals that at that time, Kentucky had not yet caused a detainer to be lodged with Tennessee officials. Ward's copies of his IAD forms, and specifically that portion completed by Warden Alan Bargery, state that there were no detainers against Ward currently on file where he was incarcerated. It is settled precedent that an inmate cannot invoke the protections of the IAD and commence the running of the time limitations *until a detainer has been filed in the jurisdiction where he is incarcerated.* *Schneider v. Commonwealth,* 17 S.W.3d 530, 534 (1999); *see also, Yost, supra,* 862 S.W.2d at 853. The record does not establish when a detainer was finally lodged with Tennessee prison officials; but it is clear from the exhibits that Ward tendered in support of his motion to dismiss that the detainer had to have been filed sometime after April 2, 1999, but before his transfer to Kentucky on May 25.

Even if a detainer had been on file at the time Ward made his request for the disposition of the Kentucky charges, the 180 day period to dispose of outstanding charges would not have been triggered until the prisoner's request for final disposition had been delivered to the court and to the prosecutor. *Fex v. Michigan,* 507 U.S. 43, 52, 113 S.Ct. 1085, 1091, 122 L.Ed.2d 406, 416 (1993); *accord, Wright v. Commonwealth,* Ky.App., 953 S.W.2d 611 (1997). Since there is no dispute that the forms had not been delivered either to the Jefferson Circuit Court or to the Commonwealth's Attorney, the time limitations of Article III had not even commenced to run when Ward moved to dismiss the pending indictments. Although Ward is aware of the holding in *Fex* and its binding precedent on state courts, he nevertheless argues that:

the states obviously retain the power to examine events that surround the actions or inaction or authorities in the sending state upon receipt of the prisoner's request because it is incompatible with any notion of justice that state authorities would not be held accountable for negligent or deliberate conduct that prevents the prisoner from effectuating the rights guaranteed by the IAD. (Appellant's brief, p. 10)

■ Ward essentially is arguing that his rights have been violated as a result of the inaction of Tennessee prison officials over whom he had no control. However, there was no evidence that the Tennessee authorities deliberately or negligently attempted to thwart his rights. Even if the warden failed to mail the IAD documents to Kentucky officials, the critical issue is that no Kentucky prosecutor had yet lodged a detainer against Ward. It is the *receipt of a detainer* that operates to activate a prisoner's Article III rights and to set his custodian's duties in motion. *Fex, supra,* is dispositive of Ward's claim that he was wrongfully deprived of his Article III rights.

It is apparent from the record that Ward was returned to Kentucky pursuant to a request from officials in this state. Thus, any rights to which Ward was entitled are contained in Article IV of the IAD, which provides that:

[t]he appropriate officer of the jurisdiction in which an untried indictment . . . is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated. . . .

KRS 440.450, Art.IV(1). This Article further requires that "trial shall be commenced" within 120 days "of the arrival of the prisoner in the receiving state[.]" KRS 440.450, Art. IV(3). The 120–day rule is not defeated by the failure of the sending state to file a response or to forward any documents to Kentucky. KRS 440.450 Art. IV(2). Both the trial court and prosecutor were aware that Ward was transferred to Kentucky on May 25, 1999. Thus, Ward should have been tried no later than September 25, 1999.

While it is apparent that this portion of the IAD was violated, we believe that Ward waived his right to complain of the violation by acquiescing to be tried outside the required time period and by failing to raise the issue of alleged noncompliance with the IAD on the numerous occasions when he was before the trial court prior to the expiration of the 120 days. Ward insists that he did nothing constituting a waiver of his rights and relies on *Roberson v. Commonwealth,* Ky., 913 S.W.2d 310, 315 (1994), which holds:

> As long as [the prisoner] did not affirmatively request the court to follow a procedure inconsistent with the IAD, it was not necessary that he demand the court comply with the IAD, since, as stated previously, the burden of complying with the IAD is on the Commonwealth.

Although Ward argues convincingly that we are bound by our Supreme Court's holding in *Roberson,* that case is no longer the controlling authority on the issue of waiver. We are now bound by more recent federal precedent that has superseded and pre-empted *Roberson.*

In *New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000), the United States Supreme Court held that a defendant implicitly waives the IAD's time limits where he or his counsel agrees to a trial date outside those limits. In rejecting the argument that waiver is possible only by affirmative conduct, the *Hill* court stated:

> Finally, respondent argues that even if waiver of the IAD's time limits is possible, it can be effected only by affirmative conduct not present here. The New York Court of Appeals adopted a similar view, stating that the speedy trial rights guaranteed by the IAD may be waived either "explicitly or by an affirmative request for treatment that is contrary to or inconsistent with those speedy trial rights." 92 N.Y.2d at 411, 704 N.E.2d, at 545. The court concluded that defense counsel's agreement to the trial date here was not an "affirmative request" and therefore did not constitute a waiver. *Id.* at 412, 704 N.E.2d at 546. We agree with the State that this makes dismissal of the indictment turn on a hypertechnical distinction that should play no part. As illustrated by this case, such an approach would enable defendants to escape justice by willingly accepting treatment inconsistent with the IAD's time limits, and then recanting later on. Nothing in the IAD requires or even suggests a distinction between waiver proposed and waiver agreed to. In light of its potential for abuse—and given the harsh remedy of dismissal with prejudice—we decline to adopt it.

*Id.,* 528 U.S. at 118, 120 S.Ct. at 666, 145 L.Ed.2d at 569. Pursuant to *Hill,* Ward's agreement to a trial date beyond the IAD's limits constituted a waiver of his speedy trial rights.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.