RENDERED: JUNE 18, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0396-MR

BILLY BAGGETT                                                     APPELLANT

v.        APPEAL FROM CHRISTIAN CIRCUIT COURT
          HONORABLE JOHN L. ATKINS, JUDGE
          ACTION NO. 22-CR-00104

COMMONWEALTH OF KENTUCKY                                           APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND McNEILL, JUDGES.

McNEILL, JUDGE: Billy Baggett ("Baggett") entered a conditional guilty plea in

Christian Circuit Court to theft by unlawful taking ($1,000 to $10,000) and first-

degree criminal mischief and was sentenced to two years in prison. The

conditional plea reserved Baggett's right to appeal the circuit court's denial of his

motion to dismiss based on the Commonwealth's failure to try him within 180 days

of his request for final disposition of his charges in violation of the Interstate

Agreement on Detainers ("IAD"), KRS[1] 440.450–KRS 440.510. For the reasons below, we reverse the judgment and sentence and remand for the circuit court to dismiss the indictment.

## BACKGROUND

In February 2022, Baggett was indicted in Christian County for theft by unlawful taking over $10,000 and first-degree criminal mischief in connection with stealing a lawnmower and causing property damage. After being arraigned, he was released on his own recognizance. While incarcerated in Tennessee on other charges, Baggett submitted an IAD Form II to prison officials to request final disposition of the outstanding Kentucky charges. IAD Forms III and IV were completed and signed by Warden Johnny Fitz of the West Tennessee State Penitentiary (where Baggett was serving) and forwarded to the commonwealth attorney and circuit court clerk.

Although the original forms are not in the court file, copies tendered by Baggett's attorney show that the forms were signed by Warden Fitz on August 7, 2023. Baggett's attorney also provided copies of return receipts signed by representatives of the Commonwealth Attorney's office and the circuit court clerk's office, postmarked August 17, 2023. Despite receipt of the IAD forms, nothing happened in Baggett's case until January 29, 2024, when the

---

[1] Kentucky Revised Statutes.

Commonwealth moved for a continuance because "the previous Commonwealth's Attorney failed to prepare the necessary [IAD] paperwork." An email the same day from the Commonwealth Attorney to the court and Baggett's counsel states, "My office is not at fault for not meeting the time restrictions of 180 days when this IAD was signed by the warden and inmate Baggett on 08-02-2023. [The former Commonwealth Attorney] and her staff had plenty of time to complete the request, but they did not."

Baggett moved to dismiss the indictment because more than 180 days had passed since his August 2023 request for a speedy trial. The Commonwealth opposed the motion, arguing that the IAD allows a court to grant a continuance for "good cause." It claimed it should not be held responsible for the previous administration's failure to complete the IAD paperwork. In support, it cited the prosecutor's IAD manual, which states "a prosecutor who is not responsible for a violation of the IAD will not incur a dismissal when others have caused the violation[]" and *Fex v. Michigan*, 507 U.S. 43, 49, 113 S. Ct. 1085, 1089, 122 L. Ed. 2d 406 (1993). It also cited *Johnson v. Commonwealth*, 450 S.W.3d 696 (Ky. 2014), *abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015), which held that "lack of awareness of Appellant's IAD request among his defense counsel, the trial court, and the prosecutor, in combination with the difficulty in securing the attendance of an apprehensive witness" supported a

finding of good cause to continue a trial. *Id.* at 701. The circuit court found the Commonwealth had shown good cause for a continuance and denied Baggett's motion to dismiss. This appeal followed.

## STANDARD OF REVIEW

The construction and application of the IAD are questions of law, so our review is *de novo*. *See Ward v. Commonwealth*, 62 S.W.3d 399, 402 (Ky. App. 2001).

## ANALYSIS

Baggett argues the circuit court erred in denying his motion to dismiss because the Commonwealth failed to show good cause for a continuance. The Commonwealth responds that Baggett did not prove the required notice to trigger the IAD's time limits or, alternatively, that good cause existed for the continuance. The IAD is "a statutory scheme which prescribes procedures by which an out-of-state prisoner may demand the speedy disposition of charges pending against him in Kentucky (Article III) . . . ." *Ward*, 62 S.W.3d at 402. The statute "clearly sets forth the time limits within which a defendant who is subject to the statute must be tried." *Bryant v. Commonwealth*, 199 S.W.3d 169, 172 (Ky. 2006).

Paragraph one of Article III of the IAD, KRS 440.450, provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party

-4-

state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . .

However, "for good cause shown," the court "may grant any necessary or reasonable continuance." KRS 440.450(Art. III)(1).

We first quickly dispense with the Commonwealth's argument that Baggett failed to prove the required notice to activate the 180-day time limit. In *Fex*, 507 U.S. at 52, 113 S. Ct. at 1091, the United States Supreme Court held that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *See also Johnson*, 450 S.W.3d at 700. It is undisputed that the Commonwealth received the IAD paperwork. However, as noted above, the originals are not in the court file. Thus, the Commonwealth contends there is some question as to whether the court ever received Baggett's IAD request. It notes the return receipt signed by the court clerk "is proof that 'something' was sent, but it is not conclusive that it was the IAD paperwork[.]"

-5-

This assertion ignores the evidence. Baggett tendered copies of his IAD request showing that they were signed in early August 2023. He also provided copies of return receipts sent from West Tennessee State Penitentiary, signed by representatives of the Commonwealth Attorney's office and the circuit court clerk's office. These return receipts are postmarked August 17, 2023, just two weeks after the IAD forms were signed. Both return receipts bear the handwritten notation "re: Baggett." And, as noted above, the Commonwealth concedes that it, in fact, received Baggett's IAD request as it is in their file. Thus, there is no question that the forms were sent. Taken together, we believe this is more than enough evidence to prove actual notice of Baggett's IAD request.

Having determined that Baggett properly invoked the IAD, the question becomes whether the Commonwealth demonstrated good cause for failing to bring him to trial within 180 days of its receipt of his IAD paperwork. We hold that it did not. The Commonwealth's only explanation for failing to comply with the IAD is that the previous Commonwealth Attorney essentially "dropped the ball."

While the IAD does not define "good cause," Kentucky courts have found good cause for a continuance where a defendant received a new attorney a week before trial, *Roberson v. Commonwealth*, 913 S.W.2d 310, 314 (Ky. 1994), *overruled on other grounds, abrogation recognized by Parks v. Commonwealth*, 89

-6-

S.W.3d 395 (Ky. 2002), and where the Commonwealth was unable to secure a key witness for trial. *Johnson*, 450 S.W.3d at 701. At the federal level, good cause has also been found where court congestion prevented trial within the IAD's time limits, despite the trial court's best efforts to accommodate. *Brown v. Wolff*, 706 F.2d 902, 906 (9th Cir. 1983). And good cause has been found where the state sought to remedy a defective indictment. *King v. Brown*, 8 F.3d 1403, 1410 (9th Cir. 1993).

However, we have been unable to locate, and the Commonwealth has not cited to, any authority holding that the Commonwealth's simple failure to act within the statutory time limits constitutes good cause. Inattention, carelessness, or complacence by the Commonwealth is contrary to the spirit of the IAD, which is "to encourage the expeditious and orderly disposition of . . . charges[.]" KRS 440.450(Art. I); *see also State v. Pero*, 851 A.2d 41, 52 (N.J. Super. Ct. App. Div. 2004) ("The intent and rationale for enacting the IAD was to counter the perceived evil when prosecutorial delay or inattention fail to provide a defendant incarcerated in another jurisdiction an opportunity for prompt disposition of charges.").

Nor do we think it matters that the previous administration's failure to act caused the violation. It is the Commonwealth that is a party to the IAD and has an affirmative duty to comply with its terms. The Commonwealth Attorney is merely an agent of the Commonwealth. Whether under the previous

-7-

administration or the current administration, the Commonwealth's duty is the same.

The Commonwealth cites *Johnson*, 450 S.W.3d 696, for support for the idea that good cause exists for a continuance where the prosecutor is unaware of a speedy trial request until right before the time limit is about to expire. In *Johnson*, our Supreme Court determined that the defendant had failed to strictly comply with the IAD but noted that even forgiving this noncompliance, the circuit court did not abuse its discretion in finding good cause for a continuance considering the "lack of awareness of Appellant's IAD request among his defense counsel, the trial court, and the prosecutor, in combination with the difficulty in securing the attendance of an apprehensive witness[.]" *Id.* at 701. There are several problems with the Commonwealth's reliance upon *Johnson*. One, the above statement is dicta. Two, there was no evidence in that case that the Commonwealth knew of the IAD request, whereas here the Commonwealth clearly did but just failed to act. And three, other grounds for good cause existed in that case, *e.g.*, the difficulty in securing a critical witness for trial. Here, the only proffered ground for a continuance is that the previous Commonwealth Attorney neglected to complete the IAD paperwork. We simply cannot find that this constitutes "good cause" for a continuance, considering the IAD's purpose.

Finally, we briefly address an argument made by the Commonwealth below in support of its motion for a continuance, which the trial court apparently relied upon. In claiming it should not be held responsible for the prior administration failing to complete the IAD paperwork, the Commonwealth cited a portion of the prosecutor's IAD manual which states: "the U.S. Supreme Court and most other courts have . . . held that a prosecutor who is not responsible for a violation of the IAD will not incur a dismissal when others have caused the violation."[2] The prosecutor's manual in turn cited *Fex v. Michigan*, 507 U.S. 43, 113 S. Ct. 1085, 122 L. Ed. 2d 406 (1993) (among other cases) for support. The circuit court referenced this authority in finding good cause. At the hearing on the motion to dismiss and motion for continuance, the court stated:

> Well, I'm going to deny the motion to dismiss because I believe that the cases that the Commonwealth has provided concerning third parties that interfere . . . who dropped the ball . . . though their failure to, uh, adequately respond to an IAD, uh, motion shouldn't interfere with uh, the actual officer responsible for doing that from doing . . . his or her duty. Um, and I think that's exactly what happened here.

However, *Fex* did not concern what constitutes good cause for a continuance under the IAD. It defined the contours of a defendant's duty under the IAD. In that case, the Supreme Court held that the IAD's speedy trial requirement

---

[2] For clarity, we take "dismissal" to mean dismissal of the case.

did not commence "until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Id.* at 52, 113 S. Ct. at 1091.

In rejecting defendant's assertion that the 180-day countdown should begin when he tendered his IAD request to prison officials, the Court noted that such an interpretation would produce unfortunate results: "If, through negligence of the warden, a prisoner's IAD request is delivered to the prosecutor more than 180 days after it was transmitted to the warden, the prosecution will be precluded before the prosecutor even knows it has been requested." *Fex*, 507 U.S. at 50, 113 S. Ct. at 1090. The Court noted that this consequence could perhaps be avoided by the state invoking the IAD's "good-cause continuance" clause but believed it unlikely that the statutory intent was to have this clearly undesirable result hang on the largely discretionary application of that provision. *Id.* at 50-51, 113 S. Ct. at 1090.

Thus, *Fex* did not hold that a "prosecutor who is not responsible for a violation of the IAD will not incur a dismissal when others have caused the violation." It determined that the IAD's 180-day time limit (and consequently the prosecutor's duty under the IAD) only begins to run once a prosecutor receives a defendant's IAD request. If, as in the hypothetical in *Fex*, a warden fails to deliver the paperwork to the prosecutor, a defendant would not be entitled to dismissal of

his charges. But this is because the defendant failed to strictly comply with the IAD's requirement that "he shall have caused to be delivered to the prosecuting officer" his IAD request, not because of some general rule that dismissal is inappropriate when someone other than the prosecutor caused the violation. In any event, as noted above, the distinguishing fact in this case is that, here, the Commonwealth Attorney was responsible for violating the IAD, even if not the *current* Commonwealth Attorney. Simply put, the Commonwealth's (and circuit court's) reliance upon *Fex* was misplaced, and the circuit court erred in granting the Commonwealth's motion for a continuance.

If an inmate is not tried within 180 days, the IAD provides that "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." KRS 440.450(Art. V)(3). Because the Commonwealth failed to bring Baggett to trial within 180 days of receiving his IAD request,[3] and because it failed to show good cause for a continuance, Baggett's indictment must be dismissed.

---

[3] The exact date the Commonwealth and court received Baggett's IAD request is unclear from the record. As noted above, the record contains return receipts signed by representatives of the Commonwealth Attorney and Christian Circuit Court Clerk postmarked August 17, 2023. Thus, Baggett's IAD request was likely received shortly after August 17, 2023. This would put the expiration of the 180-day speedy trial requirement on February 13, 2024, at the earliest. Regardless, the time limit had certainly expired by the time the circuit court denied Baggett's motion to dismiss (and granted the Commonwealth's motion for a continuance) on January 8, 2025.

## CONCLUSION

Accordingly, the March 18, 2025, judgment and sentence of the Christian Circuit Court is reversed, and we remand with instructions to dismiss the indictment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jennifer E. Hubbard
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell E. Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky