**Perry Michael SCROGGINS, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2013–CA–000579–MR.

Court of Appeals of Kentucky.

Oct. 17, 2014.

Roy A. Durham, Frankfort, KY, for Appellant.

Jack Conway, Attorney General, David W. Barr, Frankfort, KY, for Appellee.

Before CLAYTON, DIXON, and JONES, Judges.

## OPINION

CLAYTON, Judge:

Perry Michael Scroggins appeals from the March 11, 2013, judgment and sentence of the Daviess Circuit Court, which found him guilty of manufacturing methamphetamine and sentenced him to ten years' incarceration. We reverse and remand.

In April of 2012, Scroggins was indicted for one charge each of manufacturing methamphetamine and controlled substance endangerment to a child, fourth degree. A warrant was issued for his arrest. On August 22, Scroggins filed an interstate detainer demand for trial, in which he indicated that he was currently incarcerated and serving a two-year sentence in Indiana. Scroggins was transferred to Kentucky where he was arraigned on October 5, 2012. Following his arraignment, a district court case which was identical to the underlying circuit court case, was dismissed, and an order of release was entered by the district court. Therefore, while the underlying circuit court case was still pending, the Daviess County Detention Center misinterpreted the district court dismissal and, on November 2, 2012, returned Scroggins to Indiana. Upon discovering the detention center's mistake, the trial court issued a new warrant. Scroggins was returned to Kentucky and again placed in the custody of the Daviess County Detention Center.

Following his return to Kentucky, Scroggins filed a motion to dismiss the charges against him. Therein, Scroggins argued that the Commonwealth had violat-

ed the Interstate Agreement on Detainers (IAD), Kentucky Revised Statutes (KRS) 440.450, when he was returned to Indiana prior to the disposition of his Kentucky charges. The trial court denied Scroggins's motion to dismiss by order entered January 30, 2013. Thereafter, Scroggins entered into a conditional guilty plea, in which he reserved the right to appeal the trial court's ruling on his motion to dismiss. A final judgment and sentence on that guilty plea were entered on March 11, 2013. This appeal followed.

Scroggins's sole argument on appeal is that the trial court erred when it failed to dismiss his charges. He argues that the Commonwealth violated the IAD when it failed to dispose of his case prior to returning him to Indiana. We agree.

This Court has identified the IAD as:

a statutory scheme which prescribes procedures by which an out-of-state prisoner may demand the speedy disposition of charges pending against him in Kentucky (Article III) and procedures by which a prosecutor can secure the presence of a prisoner detained in another state for disposition of an outstanding charge (Article IV).

*Ward v. Commonwealth*, 62 S.W.3d 399, 402 (Ky.App.2001). The purpose of the IAD is twofold: to eliminate abuses of the detainer system and to present detainees with a speedy and fair trial. *Id.; Matthews v. Commonwealth*, 168 S.W.3d 14 (Ky.2005). Scroggins argues that the Commonwealth violated Article II of the IAD, which reads in relevant part:

If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

KRS 440.450, Article III(4). Scroggins asks this court to apply the holding of *Alabama v. Bozeman*, in which the Supreme Court of the United States held that the language of the IAD is absolute and contains no *de minimus* exception to the "no return" requirement. *Alabama v. Bozeman*, 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). We agree that *Bozeman* is applicable herein. The Court in *Bozeman* clearly indicates that the language of the IAD is absolute. Furthermore, the language of the IAD provides "[t]his agreement shall be liberally construed so as to effectuate its purposes." KRS 440.450, Article IX. As stated above, the purposes of the IAD are to eliminate abuses of the detainer system and to present detainees with a speedy and fair trial. *Ward*, 62 S.W.3d 399; *Matthews*, 168 S.W.3d 14. Scroggins's continued prosecution has clearly frustrated these goals.

For the foregoing reasons, the March 11, 2013, judgment and sentence of the Daviess Circuit Court is reversed and remanded with instructions to grant Scroggins's motion to dismiss.

JONES, Judge, concurs by separate opinion.

DIXON, Judge, concurs by separate opinion and joins in the separate concurrence of Judge JONES.

JONES, Judge, concurring:

I agree with the majority that the outcome of this appeal is dictated by *Alabama v. Bozeman* and KRS 440.450. Furthermore, I agree that dismissal with prejudice is our only remedy for the Commonwealth's violation of the IAD in this instance. I write separately because I do not believe that the one month and a half period that passed before Scroggins was

returned to Kentucky from Indiana materially prejudiced Scroggins or resulted from an intentional act by the Commonwealth. In such an instance, I believe it would be preferable for our circuit courts to have the option to dismiss with or without prejudice. This option is not currently available in Kentucky.

In contrast, the federal government, also a party to the IAD, has provided its courts with the ability to order dismissals to be without prejudice. In 1988, Congress amended the federal counterpart to the IAD vesting in receiving courts the discretion to dismiss charges, based on the anti-shuttling provisions, "with or without prejudice." 18 U.S.C.A app. 2 § 9(1). The amended provision provides:

Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State—

(1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and

(2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

18 U.S.C.A. app. 2 § 9(1)(2)

Kentucky, which originally adopted the IAD in 1974, has not modified the anti-shuttling language in accordance with the change in federal law. In this state, the IAD continues to require that dismissals, based on violations of the anti-shuttling provision, be with prejudice. Our state circuit courts lack the power to consider the factors federal district courts are *required* to consider in determining whether to dismiss with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice[.]" *Id.* § 9(1). I believe these factors are appropriate and worthy of consideration.

Moreover, I believe that, in a case like the present, these factors would militate in favor of dismissal without prejudice if our courts were permitted to consider them. Unfortunately, our current statute does not give our courts this discretion. It *mandates* dismissal with prejudice regardless of the factual circumstances.

DIXON, Judge, concurs by separate opinion.

DIXON, Judge, concurring.

While this court is required to reverse the trial court under existing law, I agree with Judge Jones's concurring opinion and write separately only to express my frustration with the necessary outcome. Moreover, I fear the possible far-reaching implications of the current state of the law. Dismissal of Scroggins's indictment due purely to an unintended technical violation is a harsh enough reality. But what if we were required to order the dismissal of a charge for the sexual assault of a child, or the dismissal of charges against an alleged serial killer due solely to a technical error which was nothing more than an inadver-

tent mistake? Lest one think this is nothing more than a "Chicken Little" scenario, as will be discussed, similar situations have already occurred in other states.

The IAD was drafted and enacted to prevent the excessive delay occurring in the cases of defendants charged with criminal offenses in more than one state. Its overarching purpose "is to encourage the expeditious disposition of charges outstanding against a prisoner and to provide procedures among member states to facilitate such disposition." *Construction and Application of Article IV of Interstate Agreement on Detainers (IAD): Issues Related to "Anti–Shuttling" Provision, Dismissal of Action Against Detainee, and Adequacy of Certificate*, 52 A.L.R. 6th 1 (2010). Kentucky's statute, KRS 440.450, contains similar language. Congress and forty-eight of fifty state legislatures have enacted and/or adopted the IAD. The Act was rightly drafted to rectify abuses occurring in cases in which a defendant was charged with criminal offenses in two or more states.

While the IAD's goal is admirable, strict adherence without consideration of the attendant circumstances can have drastic consequences so that justice for victims yields to senseless bureaucratic rules. Such was the case in *State v. Sephus*, 32 S.W.3d 369 (Tex.App.2000). Sephus was tried and convicted in April, 1995, in the Federal District Court, in Waco, Texas, for several offenses arising out of a bank robbery. He was convicted of murder and sentenced to life in prison, without eligibility for parole. He began serving his federal prison sentence in Pennsylvania. While there, Leon County, Texas, placed a detainer on Sephus, also for a pending capital murder charge. Thereafter, Harris County, Texas, through the use of the IAD, obtained temporary custody of Sephus from federal prison officials in Pennsylva-

nia. While in the temporary custody of Harris County, Sephus was tried and convicted of capital murder, receiving another life sentence in November, 1996. In 1997, Sephus was returned to the federal prison in Pennsylvania without disposing of the criminal charges pending in Leon County.

In November, 1997, Sephus was brought back to Texas, this time to Leon County, pursuant to its request for temporary custody. Sephus moved to dismiss the Leon County charges based on a violation of the anti-shuttling provisions of the IAD. The trial court agreed and dismissed the capital murder charges pending against Sephus.

On appeal, the Texas Court of Appeals affirmed the trial court's dismissal of Sephus's murder charges. The Court wrote:

> Applying the literal text of the statute to the facts: "[Because] trial [was] not had on [the Leon County] indictment ... prior to [Sephus's] being returned to [Pennsylvania] pursuant to Paragraph (e) of Article V hereof, [the Leon County] indictment ... [is of no] further force or effect, and the court shall enter an order dismissing the same with prejudice." Thus, the trial judge correctly analyzed the facts and applied the Detainers Act to them.

*Id.* at 373 (citations omitted). One could argue the dismissal of Sephus's capital murder charge had little effect since he was already serving two life sentences, yet doubtless this would have given little comfort to the family of Sephus's alleged victim.

Similarly, in *People v. Browning*, 108 Mich.App. 281, 310 N.W.2d 365 (Mich. App., 1981), first-degree murder and rape were dismissed as a result of violations of the anti-shuttling provisions of the IAD. Browning appealed his conviction for these offenses and the trial court's denial of his motion to dismiss. The state also appeal-

ed the dismissal of two first-degree murder charges which were brought under separate warrants.

Prior to Browning's arraignment on the Michigan charges, he was incarcerated in federal prison in Terre Haute, Indiana, serving a sentence based on federal charges. As a result of Michigan's detainer, Browning was transported from Terra Haute to Milan, Michigan, to stand trial on two of the three outstanding warrants. During additional court proceedings in Michigan, Browning was housed at the federal prison in Milan. However, he was eventually transferred from Milan back to Terre Haute when his trial was delayed by several months.[1]

Thereafter, Browning moved to dismiss the charges on which he was ultimately convicted on the basis that he was returned to his original place of imprisonment before trial, in violation of the anti-shuttling provisions of the IAD. The Michigan Supreme Court agreed, affirming the Court of Appeals dismissal of all charges.

Unfortunately, these are not isolated examples of the onerous consequence of the strict application of the IAD anti-shuttling provisions. Case law is replete with other illustrations. For just a few, *see, e.g., U.S. v. Gezelman,* 522 F.Supp.2d 344 (D.Mass. 2007) (violations of the anti-shuttling provision of the IAD compelled dismissal of being a felon in possession of a firearm); *U.S. v. Richotte,* 627 F.Supp.2d 1075 (D.S.D.2009) (defendant's charge of assaulting a federal law enforcement officer dismissed pursuant to violation of the IAD); *Gillard v. State,* 486 So.2d 1323 (Ala.Crim.App.1986) (robbery charges dismissed for IAD violation); *Marshall v. Superior Court,* 183 Cal.App.3d 662, 228 Cal.Rptr. 364 (4th Dist.1986) (IAD violation required dismissal of murder charges); *Runck v. State,* 497 N.W.2d 74 (N.D.1993) (defendant's conviction for conspiracy to commit arson and of being an accomplice to arson dismissed for violation of IAD); *People v. Fargher,* 112 A.D.2d 599, 492 N.Y.S.2d 123 (3d Dep't 1985) (IAD violation required dismissal of conviction for robbery in the first degree).

Clearly, strict application of IAD's mandatory dismissal provisions has resulted in the dismissal of numerous serious criminal charges. However, as noted in the majority opinion herein, the United States Supreme Court has determined in *Bozeman, supra,* the anti-shuttling provisions of the IAD must be strictly followed.

In *Bozeman,* Alabama argued that the basic purpose of the anti-shuttling provisions of the IAD is to prevent shuttling which would interrupt a prisoner's rehabilitation. Because Bozeman was in the Alabama court only one day, the State maintained that this brief appearance had not interrupted Bozeman's rehabilitation: "Hence, any violation is "technical," "harmless," or *de minimis.*" *Alabama v. Bozeman,* 533 U.S. at 153, 121 S.Ct. at 2084.

As addressed in the majority opinion here, *Bozeman* makes clear there is no *de minimus* exception for merely transport-

---

1. Interestingly, similar to the facts before us, Browning was apparently mistakenly transferred back to Terre Haute:

   Testimony at a Federal court hearing in a simultaneously ongoing case involving this issue indicated that defendant's transfer was initiated by a United States deputy marshal who thought that he had received authorization for such a move from an as-
sistant prosecuting attorney. Because the state attorney was, without question, in Europe when the transfer was initiated, we are left only with the knowledge that the move was partly at the behest of Federal officials.

*Browning,* 108 Mich.App. at 299, 310 N.W.2d at 374.

ing an inmate for only a few days. While it is apparent that the language of the IAD mandates dismissal for any violation of the anti-shuttling provision, the Supreme Court's purported rationale for the statute's strict language simply does not exist under the facts here.

Indisputably, Scroggins was erroneously returned to Indiana without a court order to do so. Significantly, in *Bozeman*, Alabama had *intentionally* returned the inmate after a single day in an Alabama court. Alabama admitted its violation of the IAD, but argued it was merely a technical one. Attempting to bolster its decision to return Bozeman to the sending state prior to his trial in Alabama, the state argued that the violation actually benefitted Bozeman by not interrupting his rehabilitation. The Supreme Court determined otherwise.

> [W]e could not say that the violation at issue here qualifies as trivial. That is because the purpose of the "no return" provision cannot be as Alabama ... describe[s] it, namely, as a simple, direct effort to prevent the interruption of rehabilitation. A provision that prevents *returning* a prisoner who has arrived in the receiving State does not directly *increase* the number of days the prisoner will spend in rehabilitation in the sending State. Rather, it directly and intentionally *decreases* the number of days that prisoner will spend in the sending State.
>
> This point is obvious once one keeps in mind that the trial must take place within 120 days of the prisoner's arrival in the receiving State. Article IV(e)'s requirement that the prisoner remain in the county jail means that the prisoner will spend all of those 120 days away from the sending State's rehabilitation programs. By contrast, returning the prisoner prior to trial—in violation of Article IV(e)—would permit the prisoner to participate in the sending State's program for some of those days. But to call such a violation "technical," because it means fewer days spent away from the sending State, is to call virtually *every* conceivable antishuttling violation "technical"—a circumstance which, like the 13th chime of the clock, shows that Alabama's conception of the provision's purpose is seriously flawed.

*Bozeman*, 533 U.S. at 154–155, 121 S.Ct. at 2085. The Supreme Court then addressed the purposes of the anti-shuttling provisions:

> Article IV(e) may seek to remove obstructions to prisoner rehabilitation in a different way. The Agreement not only prevents "return," but it also requires the receiving State to pay for the prisoner's incarceration in that State during the period prior to trial. Art. V(h) ("From the time that a party State receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending State, the [receiving] State ... shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping, and returning the prisoner"). That requirement may provide the receiving State with an incentive to shorten the pretrial period— to proceed to trial faster than 120 days or not to seek extensions—thus disposing of detainers, and the attendant "uncertainties which obstruct programs of prisoner treatment and rehabilitation," in the most "expeditious" manner. Art. I. ... But if that is Article IV(e)'s purpose, the transfer here was inconsistent with it. By returning Bozeman to federal prison, the county saved itself the cost of housing him—and for a nontrivial several week period, which may have allowed it to delay resolving the detainer.

*Bozeman,* 533 U.S. at 155, 121 S.Ct. at 2086. (Citation omitted). Clearly here, no such considerations apply. There was no intent to shift the burden of Scroggins's incarceration to Indiana. The violation occurred purely by human error, not intentional circumvention. Moreover, there would be no reason to lengthen the IAD's time limitations due to Scroggins's unintended return to Indiana. Those days could easily be factored in to the time limitations proscribed by the IAD. *See id.* 533 U.S. at 155, 121 S.Ct. at 2086. There was no intent to *obstruct* anything.

A review of cases decided since *Bozeman* reflects the struggle courts have faced as a result of the harsh application of the IAD. Courts have found a few ways to distinguish its holding, yet none of these are applicable here. However, as rightly noted by Judge Jones, federal courts are permitted to blunt the harsh provisions of the IAD. They have the option of dismissal of criminal charges "without prejudice"— something that is not available to states adopting the provisions of the IAD. Congress has specifically granted federal courts this avenue of relief pursuant to 18 U.S.C.A. app. 2 § 9, which by its terms applies only when the United States is the "receiving State." [2]

After a rather lengthy search I have found no case wherein any state has amended its statutory version of the IAD to permit dismissal without prejudice, as is allowed the federal government. Thus it is unclear as to whether this could be a possible avenue of relief to states in order to blunt the harsh results due to this strict application of the IAD provisions. Nevertheless, the West Virginia Supreme Court in *Pethel v. McBride,* 219 W.Va. 578, 638 S.E.2d 727 (2006), permitted such pursuant to their procedural rule-making powers.

Pethel was convicted of multiple counts of sexual assault, and filming a minor in a sexually explicit conduct, among other criminal offenses. Prior to his conviction, Pethel was incarcerated in Ohio following revocation of his parole for offenses committed in Ohio. Pursuant to the provisions of each state's IAD statutes, Pethel was returned to West Virginia for arraignment. Thereafter, he was returned to Ohio. Pethel was transported back to court in West Virginia several times and each time returned to Ohio.

Pethel subsequently filed a motion to dismiss the West Virginia charges, alleging violation of the IAD anti-shuttling provisions. The motion was denied and upheld on appeal. Eventually he filed a writ for habeas corpus in the circuit court of his conviction, again arguing that the violation of the IAD anti-shuttling provisions required dismissal of the West Virginia charges. This time the circuit court agreed and dismissed these charges with prejudice, vacating Pethel's conviction.

**2.** Special provisions when United States is a receiving State—

Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State—

(1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and

(2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

On appeal, the West Virginia Supreme Court considered several issues related to the IAD. Of significance here was the Court's determination that dismissal with prejudice was not required under the IAD. The Court first observed that West Virginia had enacted the IAD prior to Congress's amendment altering the IAD's mandatory dismissal provisions by permitting federal courts to dismiss without prejudice. The Court went on to note that, while West Virginia's version of the IAD does not contain the federal government's amendment, nevertheless, under the state Supreme Court's rulemaking authority, it had the power to amend procedural rules. And, therefore, because the issue of dismissal with prejudice or without prejudice is a procedural rule, the Court had the power to determine whether the rule should be changed. After concluding that the IAD's mandatory dismissal requirements conflicted with other procedural rules promulgated by the Court, it held:

> Accordingly, we find it necessary to adopt the 1988 federal amendments to the IAD into the laws of this State and hold that in a case in which West Virginia is a receiving State pursuant to the *Interstate Agreement on Detainers Act,* W. Va.Code § 62–14–1, *et seq.* (1971), any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice. It shall not be a violation of the agreement on detainers if, prior to trial, the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the State of West Virginia and an opportunity for a hearing.

*Pethel,* 219 W.Va. at 597, 638 S.E.2d at 746. Applying these factors to Pethel's case, the Court determined that any dismissal should have been without prejudice.

Whether by legislative amendment to Kentucky's IAD statutes or by Kentucky's Supreme Court's rule-making powers, it is my view that some relief must be given to the Commonwealth in circumstances like these wherein violations of the IAD's anti-shuttling provisions are purely accidental.